**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**PINE BLUFF DIVISION**

WILLIAM COLTEN,
ADC #147673                                                                        PLAINTIFF

5:12CV00263-KGB-JTK

RAY HOBBS, et al.                                                              DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge
Kristine G. Baker. Any party may serve and file written objections to this recommendation.
Objections should be specific and should include the factual or legal basis for the objection.  If the
objection is to a factual finding, specifically identify that finding and the evidence that supports your
objection.  An original and one copy of your objections must be received in the office of the United
States District Court Clerk no later than fourteen (14) days from the date of the findings and
recommendations.   The copy will be furnished to the opposing party.   Failure to file timely
objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or
additional evidence, and to have a hearing for this purpose before the District Judge, you must, at
the same time that you file your written objections, include the following:

1.        Why the record made before the Magistrate Judge is inadequate.

2.        Why the evidence proffered at the hearing before the District Judge (if such a
hearing is granted) was not offered at the hearing before the Magistrate Judge.

1

3.     The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite A149
Little Rock, AR 72201-3325

## DISPOSITION

## I.     Introduction

This matter is before the Court on the Defendants' Motion for Summary Judgment (Doc. No. 71).  Plaintiff filed a Response in opposition to the Motion (Doc. No. 77).

Plaintiff William Colten is a state inmate incarcerated at the Cummins Unit of the Arkansas Department of Correction (ADC).   He filed this action pursuant to 42 U.S.C. § 1983, alleging Defendants violated his First and Fourteenth Amendment rights by confiscating a book and several magazine issues for displaying female nudity and gang signs.   Plaintiff asks for monetary and injunctive relief.

In his Complaint, Plaintiff states that Defendants Hobbs, May, Kelley, Lowe, Lay, Warner, and Weekly, are responsible for creating the publications policies, and Defendants Wilson, Banks, J. D. Smith, Cook, West, and J. Smith comprise the Publication Review Committee.  (Doc. No. 3, p. 8.)  Defendants Baxter, Thompson, J. Smith, Mills, and Wade are identified as Cummins Unit mail room staff who approve or reject incoming books and publications.  (Id.) Plaintiff alleges that

several issues of Esquire, Maxim, and Outdoor Life which were mailed to him were rejected as containing nudity, gang signs, and guns.  (Id., p. 9.) He complains that some of the magazines rejected did not contain nudity, that none of the articles promoted gang activity, and that other prisoners have been permitted to receive the same publications which were denied to him.  (Id.) Finally, he complains that he purchased a book in January, 2012, entitled, "Majestika: The Art of Monte," by Michael Moore, which was rejected and later destroyed.  (Id., p. 10.)

## II.    Summary Judgment Motion

Pursuant to FED.R.CIV.P. 56(a), summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  See Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997).  "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'"  Webb v. Lawrence County, 144 F.3d 1131, 1134 (8th Cir. 1998), quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (other citations omitted).  "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'"  Id. at 1135.  Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." Id.

A.      **Official Capacity**

Defendants correctly assert that Plaintiff's monetary claims against them in their official capacities should be dismissed, as barred by sovereign immunity.   Will v. Michigan Dep't. of State Police, 491 U.S. 58, 65-66 (1989); Murphy v. State of Arkansas, 127 F.3d 750, 754 (8th Cir. 1997).

B.      **Exhaustion**

Defendants next ask the Court to dismiss Plaintiff's Complaint for failure to exhaust his administrative remedies as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e.  Defendants state that Plaintiff filed and exhausted two grievances about the rejected publications, but only named Defendant Weekly in one of the grievances.  Pursuant to Jones v. Hobbs, Defendants state that the other named Defendants should be dismissed because the ADC grievance policy requires an inmate to specifically identify the persons involved in the grievances which were filed.  No. 12-2002 (8th Cir. Jan. 22, 2013) (per curiam).  Defendants include the Declaration of Barbara Williams, Inmate Grievance Supervisor for the ADC, who states that Plaintiff did not file or exhaust a single grievance naming Defendants Hobbs, Kelley, Lay, Warner, Banks, Jackie Smith, May, Baxter, Thompson, West, Wade, or Lowe.  (Doc. No. 71-1, p. 3.)

In response, Plaintiff states that one of the grievances he filed, CU-12-00347, includes the notation that he retains the right to name others as they become known, and that his grievance was responded to without any objection to this notation.

According to the PLRA,

> No action shall be brought with respect to prison conditions under
> section 1983 of this title, or any other Federal law, by a prisoner
> confined in any jail, prison, or other correctional facility until such
> administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a), unconst'l on other grounds, Siggers-El v. Barlow, 433 F.Supp.2d 811, 813

(E.D. Mich. 2006). The courts have interpreted this provision as a mandatory requirement that administrative remedies be exhausted prior to the filing of a lawsuit.  In <u>Booth v. Churner</u>, 532 U.S. 731, 741 (2001), the United States Supreme Court held that in enacting the PLRA, "Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures."  In addition, the United States Court of Appeals for the Eighth Circuit held, "[t]he statute's requirements are clear: If administrative remedies are available, the prisoner must exhaust them.  Chelette failed to do so, and so his complaint must be dismissed, for 'we are not free to engraft upon the statute an exception that Congress did not place there.'"  <u>Chelette v. Harris</u>, 229 F.3d 684, 688 (8th Cir. 2000), quoting <u>Castano v. Nebraska Dep't of Corrections</u>, 201 F.3d 1023, 1025 (8th Cir. 2000).   In <u>Johnson v. Jones</u>, 340 F.3d 624, 627 (8th Cir. 2003), the Court held that "[u]nder the plain language of section 1997e(a), an inmate must exhaust administrative remedies *before* filing suit in federal court....If exhaustion was not completed at the time of filing, dismissal is mandatory."  (Emphasis in original.)   Finally, in <u>Jones v. Bock</u>, 549 U.S. 199, 218 (2007) the United States Supreme Court held that while the PLRA itself does not require that all defendants be specifically named in an administrative grievance, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."

However, the United States Court of Appeals for the Eighth Circuit recently ruled that if prison officials decide a procedurally-flawed grievance on the merits, they effectively waive the argument that an inmate failed to exhaust because he did not comply with the grievance procedures. In <u>Hammett v. Cofield</u>, 681 F.3d 945 (8th Cir. 2012), an inmate relied on grievances which were not exhausted or which were filed outside of mandatory time limits.  The Court decided, however, that the "PLRA's exhaustion requirement is satisfied if prison officials decide a procedurally flawed

grievance on the merits."  681 F.3d at 947.  This line of reasoning was extended to an exhausted

grievance filed by an inmate who failed to comply with prison procedures requiring that defendants

be specifically named, in <u>Bower v. Kelley</u>, 494 Fed.Appx. 718, 2012 WL 6199266 (8th Cir. 2012).

In this particular case, Plaintiff filed two grievances, CU-12-00347, and CU-12-00533.  In

347, Plaintiff grieved the denial of issues of Esquire and Maxim due to nudity and gang signs

content.  (Doc. No. 71-1, p. 4.)  He named Defendant Warden Weekly in the grievance, and stated,

"I retain the right to name others as they become know (sic)."  (<u>Id</u>.)  The Warden/Center Supervisor

denied his grievance, and Plaintiff filed an appeal, which also was denied.  (<u>Id</u>., pp. 5-8.)    In

grievance 533, Plaintiff complained that employees in the mail room were withholding from him

publications in retaliation for his past grievances, complained about not receiving issues of Outdoor

Life, and complained about the rejection of an art book (Majestika).  (<u>Id</u>., pp. 9-13.)  Although

Plaintiff did not specifically name any individuals (or defendants) in this grievance, the grievance

was responded to on the merits and ultimately denied on appeal.  (<u>Id</u>.)

The Court finds that Plaintiff exhausted his administrative remedies in these grievances for

the following reasons.  In grievance 347, Plaintiff specifically reserved the right to name additional

individuals.  Therefore, the grievance adequately placed ADC officials (and Defendants) on notice

about the incident, which is the purpose of the grievance procedure.  (See Administrative Directive

10-32, Doc. No. 71-5.)  <u>See also</u> <u>Woodford v. Ngo</u>, 548 U.S. 81, 90 (2006), where the court held that

an exhaustion requirement gives "the agency a fair and full opportunity to adjudicate their claims."

And in grievance 533, Defendants addressed the merits of Plaintiff's grievance despite the fact that

he never specifically identified any individuals, as set forth in the grievance procedure, AD 10-

32.IV.E.2 (Doc. No. 71-5, p. 5.)  The Court finds that the latter situation is similar to the situation

6

in <u>Hammett v. Cofield</u>, 681 F.3d 945.  Therefore, the Court finds that Defendants' Motion should be denied on this basis.

### C.        First Amendment Claim

Defendants state that the law is well settled that appropriate deference be given to the decisions of prison administrators, and that prison rules which protect the security and good order of the prison have been found to serve legitimate penalogical interests.  <u>Jones v. North Carolina Prisoners' Labor Union, Inc</u>., 433 U.S. 119, 125 (1977); <u>Hosna v. Groose</u>, 80 F.3d 298 (8th Cir. 1996).  The publications policy at issue, AD 09-44, provides that publications "are subject to inspection and may be rejected if found to be detrimental to the security, discipline or good order of the institution..."  (Doc. No. 71-2, p. 6.)  Nudity is described as a "depiction in which genitalia, buttock(s) or female breasts are fully exposed."  (<u>Id</u>., p. 7.)   Publications may be rejected for containing, "but not limited to," a variety of information, including "sexually explicit material...which features nudity.," (<u>Id</u>.)  Defendants also provide to the Court, under seal, excerpts from the magazines and the book which are at issue in this case (Doc. No. 76).

Defendants rely on <u>Turner v. Safley</u>, where the Court held that a prison regulation which allegedly impinges on prisoners' constitutional rights is valid if it is reasonably related to legitimate penalogical interests.  485 U.S. 78, 89 (1987).  Defendants state that the purpose behind the challenged publications policies in this case is to minimize security threats, and maintain discipline and good order.  (Affidavit of Warden Gaylon Lay, Doc. No.  71-2, p. 1.)  In analyzing the restrictions on nudity and gang signs in light of the four factors set forth in <u>Turner v. Safley</u>,[1] Lay

---

[1]In Turner, the Court noted four factors to consider when determining if a restriction is reasonable: 1) whether a valid, rational connection exists between the regulation and the interest asserted; 2) whether alternative means of exercising the right exist; 3) the effect of the

states that rejecting publications which contain gang signs serves a legitimate security interest because the ADC must ensure that units are free from gang activity, which could result in violence to staff and other inmates.  (Id., pp. 4-5.)  Similarly, rejection of nudity and sexually explicit publications helps ensure the good order of the institution, because permitting such publications could interfere with rehabilitation goals of sex offenders, and with security, since inmates might try to traffic and trade with others.  (Id., p. 5.)  Defendants further state that Plaintiff possesses alternatives to exercise the right to freedom of expression, because he maintains the right to send, receive and read a broad range of publications which do not include those restrictions. Accommodating Plaintiff's right to these restricted publications would adversely affect guards, other inmates and prison resources, and could interfere with rehabilitation goals set for sex offenders. Finally no alternative exists which would allow Plaintiff to possess the restricted materials at little or no cost to prison security.  Therefore, pursuant to Turner, Defendants state that the publications policies do not violate Plaintiff's constitutional rights.

Defendants also rely on prior case law which upheld rejections of similar publications.  In Jones v. Golden, the court upheld the prison officials' rejection of a publication entitled "Angels of Death," because it contained gang signs. 5:10cv00068-JMM-BD, Doc. Nos. 96, 109.   The Court found that the publications policy was "reasonably related to a legitimate penalogical interest," did not "prohibit inmates from receiving all publications," and that "allowing inmates to have access to publications containing gang signed could have an adverse impact on both guards and staff." (Id.)

Plaintiff objects, stating that inmates are exposed to gang signs on television, movies, and

accommodation on the guards, other inmates, and the allocation of prison resources; and 4) whether an alternative exists which will accommodate the prisoner's needs with de minimis impact of the prison's asserted interests.  482 U.S. at 87.

in written news, and that such exposure has not resulted in a threat to security.  In addition, inmates are occasionally exposed to nudity on television and in movies, and such exposure has not resulted in sexual harassment of inmate or guards.

"Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. at 125, quoting Price v. Johnston, 334 U.S. 266, 285 (1948).  In addition, "[b]ecause the realities of running a penal institution are complex and difficult, we have also recognized the wide-ranging deference to be accorded the decision of prison administrators."  Jones, 433 U.S. at 126.  Pursuant to the four factors set forth in Turner v. Safley, the Court finds that the ADC has a legitimate penalogical objective in minimizing security threats, maintaining discipline, and maintaining good order, and that the publications policies are necessary to further such interests.  The Court further finds that Plaintiff is entitled to order other publications which do not contain gang signs or nudity, and therefore, maintains an alternative means of exercising his First Amendment right.  The Court also supports Defendants' reasoning for noting that accommodating Plaintiff's rights would have an undue impact on guards, other inmates, and prison resources.  Furthermore, as noted earlier, courts in this circuit have found that similar restrictions on publications are necessary because of the penalogical interest of institutional security.  See Jones v. Golden, 5:10cv00068; Proctor v. Smallwood, 5:06cv00075-BRW, 2009 WL 7925559 *2 (E.D.Ark. March 23, 2009).  Therefore, the Court finds that Defendants' restrictions did not violate Plaintiff's First Amendment rights.

D.     **Qualified Immunity**

Defendants also ask the Court to dismiss Plaintiff's claims against them based on qualified

immunity.  Qualified immunity protects officials who acted in an objectively reasonable manner.

It may shield a government official from liability when his or her conduct does not violate "clearly

established statutory or constitutional rights of which a reasonable person would have known."

Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  Qualified immunity is a question of law, not a

question of fact.  McClendon v. Story County Sheriff's Office, 403 F.3d 510, 515 (8th Cir. 2005).

Thus, issues concerning qualified immunity are appropriately resolved on summary judgment. See

Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (the privilege is "an immunity from suit rather than

a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is

erroneously permitted to go to trial.").

   To determine whether defendants are entitled to qualified immunity, the courts generally

consider two questions: (1) whether the facts alleged or shown, construed in the light most favorable

to the plaintiff, establish a violation of a constitutional or statutory right; and (2) whether that right

was so clearly established that a reasonable official would have known that his or her actions were

unlawful.  Pearson v. Callahan, 555 U.S. 223, 232 (2009); see also Saucier v. Katz, 533 U.S. 194,

201 (2001).[2]  Defendants are entitled to qualified immunity only if no reasonable fact finder could

answer both questions in the affirmative.  Nelson v. Correctional Medical Services, 583 F.3d 522,

528 (8th Cir. 2009).

   Upon close review of the evidence in support of the Motion for Summary Judgment, the

Court finds that Defendants acted reasonably under the circumstances.  No reasonable fact finder

---

[2]Courts are "permitted to exercise their sound discretion in deciding which of the two
prongs of the qualified immunity analysis should be addressed first in light of the circumstances in
the particular case at hand."  Nelson v. Correctional Medical Services, 583 F.3d 522, 528 (8th Cir.
2009) (quoting Pearson v. Callahan, 555 U.S. at 236).

could find that the facts alleged or shown, construed in the light most favorable to Plaintiff, established a violation of a constitutional or statutory right.

### E. Fourteenth Amendment

To the extent that Plaintiff asserts a Fourteenth Amendment claim based on the confiscation of the book, Majestika, and the subsequent destruction of the book, the Court finds that such should be dismissed. In Hudson v. Palmer, 468 U.S. 517, 536 (1984), the United States Supreme Court held that when a state actor deprives an individual of personal property, the individual does not have a § 1983 claim if the state law provides adequate post-deprivation remedies. The State of Arkansas provides such remedies through the Arkansas Claims Commission. See ARK. CODE ANN. § 19-10-204. Therefore, the Court finds that this claim also should be dismissed.

## III. Conclusion

IT IS, THEREFORE, RECOMMENDED that Defendants' Motion for Summary Judgment (Doc. No. 71) be GRANTED and that Plaintiff's Complaint against Defendants be DISMISSED with prejudice.

IT IS SO ORDERED this 8th day of July, 2013.

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE