IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

**WILLIAM COLTEN,**                                                             **PLAINTIFF**
**ADC #147673**

v.                      Case No. 5:12-cv-00263-KGB-JTK

**RAY HOBBS, et al.**                                                     **DEFENDANTS**

## ORDER

The Court has received the proposed findings and recommendations from United States Magistrate Judge Jerome T. Kearney (Dkt. No. 78). The Court has reviewed those proposed findings and recommendations, as well as the timely objections received thereto from plaintiff (Dkt. No. 79) and defendants (Dkt. No. 80), and plaintiff's objection to defendants' objections (Dkt. No. 81). The Court has reviewed the record *de novo*. For the reasons set forth below, the Court hereby grants defendants' motion for summary judgment (Dkt. No. 71) and adopts in part and amends in part the proposed findings and recommendations (Dkt. No. 78).

    **I.**    **Factual Background**

Plaintiff William Colten is a state inmate incarcerated at the Cummins Unit of the Arkansas Department of Correction ("ADC"). He filed this action pursuant to 42 U.S.C. § 1983, alleging defendants violated his First and Fourteenth Amendment rights by confiscating a book and several magazine issues for displaying female nudity, gang signs, and guns. Mr. Colten asks for a declaratory judgment and monetary and injunctive relief. In his complaint, Mr. Colten states that defendants Hobbs, May, Kelley, Lowe, Lay, Warner, and Weekly are responsible for creating the publications policies and defendants Wilson, Banks, J.D. Smith, Cook, West, and J. Smith comprise the Publication Review Committee (Dkt. No. 3). Defendants Baxter, Thompson, J. Smith, Mills, and Wade are identified as Cummins Unit mail room staff who approve or reject

incoming books and publications. Mr. Colten alleges that several issues of *Esquire*, *Maxim*, and *Outdoor Life* which were mailed to him were rejected as containing nudity, gang signs, and guns. He complains that some of the magazines rejected did not contain nudity, that none of the articles promoted gang activity, and that other prisoners have been permitted to receive the same publications which were denied to him. Mr. Colten states in his objections to the proposed findings that "guns are no longer an issue as defendants no longer deny them" (Dkt. No. 79). Finally, he complains that he purchased a book in January 2012, entitled MAJESTIKA: THE ART OF MONTE by Michael Moore, which was rejected and later destroyed.

## II.     Official Capacity Claims

Defendants correctly assert that Mr. Colten's monetary claims against them in their official capacities should be dismissed, as barred by sovereign immunity. *See Will v. Michigan Dep't. of State Police*, 491 U.S. 58, 65–66 (1989); *Murphy v. State of Arkansas*, 127 F.3d 750, 754 (8th Cir. 1997). The Court adopts the proposed findings and recommendations as to the official capacity claims (Dkt. No. 78).

## III.    Exhaustion Requirement under the Prison Litigation Reform Act

Defendants ask the Court to dismiss Mr. Colten's complaint for failure to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e. Defendants state that Mr. Colten filed and exhausted two grievances about the rejected publications but only named separate defendant Aundrea Weekly in one of the grievances. Defendants argue that the other defendants should be dismissed because the ADC grievance policy requires an inmate to specifically identify the persons involved in the grievances which were filed. *See* ADC Administrative Directive 10-32, Inmate Grievance Procedure (Dkt. No.

71-5 at IV(C)(4) ("Grievances must specifically name each individual involved for a proper investigation and response to be completed by ADC.  Inmates must fully exhaust the grievance prior to filing a lawsuit.  Inmates who fail to name all parties during the grievance process may have their lawsuit or claim dismissed by the court or commission for failure to exhaust against all parties.")).

According to the PLRA:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).  Courts have interpreted this provision as a mandatory requirement that administrative remedies be exhausted prior to the filing of a lawsuit.  In *Booth v. Churner* the Supreme Court held that in enacting the PLRA, "Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures."  532 U.S. 731, 741 (2001).  In addition, the Eighth Circuit held, "[t]he statute's requirements are clear:  If administrative remedies are available, the prisoner must exhaust them." *Chelette v. Harris*, 229 F.3d 684, 688 (8th Cir. 2000).  In *Johnson v. Jones* the Eighth Circuit held that "[u]nder the plain language of section 1997e(a), an inmate must exhaust administrative remedies *before* filing suit in federal court. . . . If exhaustion was not completed at the time of filing, dismissal is mandatory." 340 F.3d 624, 627 (8th Cir. 2003) (emphasis in original).  Finally, in *Jones v. Bock* the Supreme Court held that, while the PLRA itself does not require that all defendants be specifically named in an administrative grievance, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."  549 U.S. 199, 218 (2007).

However, the United States Court of Appeals for the Eighth Circuit recently ruled that if prison officials decide a procedurally-flawed grievance on the merits, they effectively waive the argument that an inmate failed to exhaust because he did not strictly comply with the grievance procedures. In *Hammett v. Cofield* an inmate relied on grievances which were not exhausted or which were filed outside of mandatory time limits. 681 F.3d 945 (8th Cir. 2012). The Court decided, however, that the "PLRA's exhaustion requirement is satisfied if prison officials decide a procedurally flawed grievance on the merits." *Id.* at 947.

The issue in this case is whether Mr. Colten's failure to name specifically defendants in his grievances constitutes a procedural flaw such that Mr. Colten has fulfilled the exhaustion requirement of the PLRA. The Eighth Circuit has conflicting recent opinions on this issue. The Eighth Circuit determined in *Bower v. Kelley* that an inmate who failed to comply with ADC procedures requiring that defendants be specifically named had satisfied the exhaustion requirement. 494 F.App'x. 718 (8th Cir. Dec 13, 2012) (per curiam) (citing *Hammett*, 681 F.3d at 947). The Eighth Circuit in *Parks v. Corizon, Inc.* also found that a prisoner who did not name defendants in his otherwise exhausted grievance had exhausted his administrative remedies if the prison decided the grievance on the merits. 511 F. App'x 588, 588–89 (8th Cir. June 27, 2013) (per curiam).

On the other hand, in *Jones v. Hobbs*, No. 12-2002 (8th Cir. Jan 22, 2013) (per curiam), the Eighth Circuit held that "Jones failed to exhaust his administrative remedies as to defendants Hobbs and Harris, because he did not name either of them in his grievance papers, as required by the grievance policy of the Arkansas Department of Correction," and in *Champion v. Akins*, 498 F.App'x. 670 (8th Cir. Feb. 25, 2013) (per curiam), the Eighth Circuit held that, while plaintiff

4

addressed two defendants as readers in his grievances about another defendant, plaintiff did not state how the two defendants were involved in the grieved incidents, as required by the ADC grievance policy, and thus that his administrative remedies were not exhausted with regard to those two defendants.

In attempt to reconcile this precedent, the Court notes first that, *Bower*, *Parks*, *Jones*, and *Champion*, as unpublished opinions, are not binding precedent.  8th Cir. R. 32.1(A); *United States v. Lovelace*, 565 F.3d 1080, 1085 (8th Cir. 2009).  Second, the Court notes that this Court's overwhelming recent precedent has harmonized these Eighth Circuit opinions:

> by focusing on whether—despite the procedural flaw—prison officials reached and decided the merits of the specific claims asserted against each defendant.  To make that determination, the Court must look beyond the prisoner's grievances and examine the issues that the prison officials reviewed and decided during the administrative appeal process.  This approach is consistent with the *Hammett* opinion and the purposes of the PLRA's exhaustion requirement.

*Morrow v. Kelley*, 2013 WL 6500616 (E.D. Ark. Dec. 11, 2013); *Jones v. Bond*, 2013 WL 6332681 (E.D. Ark. Dec. 5, 2013); *Hooper v. Kelley*, 2013 WL 5881613 (E.D. Ark. Oct. 30, 2013); *Scott v. Burl*, 2013 WL 5522404 (E.D. Ark. Oct. 1, 2013); *Wallace v. Warner*, 2013 WL 5531280 (E.D. Ark. Sept. 30, 2013).

Thus, the question is whether, in the instant case, prison officials reviewed and decided the merits of the specific claims against each defendant.  In this case, Mr. Colten filed two grievances, CU-12-00347 and CU-12-00533.  In grievance 347, Mr. Colten grieved the denial of issues of *Esquire* and *Maxim* due to nudity and gang signs content (Dkt. No. 71-1, p. 4).  He named defendant Warden Weekly in the grievance, and stated, "I retain the right to name others as they become know (sic)" (*Id.*).  The Warden/Center Supervisor denied his grievance, and Mr. Colten filed an appeal, which also was denied (*Id.* at 5–8).  In grievance 533, Mr. Colten

complained that employees in the mail room were withholding publications from him in retaliation for his past grievances, complained about not receiving issues of *Outdoor Life*, complained about the rejection of the art book MAJESTIKA, and again purported to retain the right to name others as they became known (*Id.* at 9). Although Mr. Colten did not specifically name any individuals in this grievance, the grievance was responded to on the merits and ultimately denied on appeal (*Id.* at 9–13).

The Court finds that Mr. Colten exhausted his administrative remedies in these grievances for the following reasons. In both grievances Mr. Colten purported to retain the right to name others as they became known. Whether or not that notation in fact caused him to retain this right, defendants addressed the merits of both grievances, despite the fact that Mr. Colten only named Ms. Weekly in grievance 347 and did not specifically identify any individuals in grievance 553. Thus, the Court finds that prison officials reviewed and decided on the merits the specific claims against each defendant in this case, that Mr. Colten's grievances were denied on appeal, and that Mr. Colten exhausted his administrative remedies with regard to these grievances.

Defendants also argue that Mr. Colten did not exhaust all available remedies with regard to the copy of MAJESTIKA that was denied him because, while he appealed grievance 553, in which he complained of the rejection of MAJESTIKA, he did not appeal the actual rejection of MAJESTIKA by the Publication Review Committee back to the Publication Review Committee as his decision letter told him to do (*See* Dkt. No. 71-2, p. 16). Defendants state that an appeal of the Publication Review Committee's rejection to the Publication Review Committee is an available administrative remedy that Mr. Colten was aware of but failed to use. Defendants also

state that the PLRA requires exhaustion of all available remedies and that, because Mr. Colten failed to appeal the Publication Review Committee's rejection of MAJESTIKA back to the committee which denied him in the first place, he did not exhaust *all* available administrative remedies with regard to the book.  Thus, pursuant to the requirements of the PLRA, defendants argue that Mr. Colten cannot bring this suit with regard to the rejection of MAJESTIKA.  The Court agrees.  *See Woodford v. Ngo*, 548 U.S. 81, 85 (2006) ("Prisoners must now exhaust all available remedies . . . .") (quotations omitted).  Because Mr. Colten failed to appeal the Publication Review Committee's rejection of MAJESTIKA, he did not exhaust all available administrative remedies and, pursuant to the PLRA, cannot sue defendants on this issue.

For the reasons stated, the Court adopts in part and amends in part the proposed findings and recommendations as to the exhaustion requirement (Dkt. No. 78).

**IV.   First Amendment Claim**

Defendants state that the law is well settled that appropriate deference be given to the decisions of prison administrators, and that prison rules which protect the security and good order of the prison have been found to serve legitimate penalogical interests.  *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 125 (1977); *Hosna v. Groose*, 80 F.3d 298 (8th Cir. 1996).  The publications policy at issue, AD 09-44, provides that publications "are subject to inspection and may be rejected if found to be detrimental to the security, discipline or good order of the institution . . ." (Dkt. No. 71-2, p. 6.).  Nudity is described as a "depiction in which genitalia, buttock(s) or female breasts are fully exposed" (*Id.* at 7).  Publications may be rejected for containing, "but not limited to," a variety of information, including "[s]exually explicit material . . . which features nudity which by its nature or content poses a threat to the

security, good order, or discipline of the institution." (*Id.*). Defendants also provide to the Court, under seal, excerpts from the magazines and the book which are at issue in this case (Dkt. No. 76).

Defendants rely on *Turner v. Safley*, where the Supreme Court held that a prison regulation which allegedly impinges on prisoners' constitutional rights is valid if it is reasonably related to legitimate penalogical interests. 482 U.S. 78, 89 (1987). Defendants state that the purpose behind the challenged publications policies in this case is to minimize security threats and maintain discipline and good order (Dkt. No. 71-2, p. 1). In *Turner*, the Supreme Court noted four factors to consider when determining if a restriction is reasonable: (1) whether a valid, rational connection exists between the regulation and the interest asserted; (2) whether alternative means of exercising the right exist; (3) the effect of the accommodation on the guards, other inmates, and the allocation of prison resources; and (4) whether an alternative exists which will accommodate the prisoner's needs with *de minimis* impact on the prison's asserted interests. *Id.* at 89–91.

In analyzing the restrictions on nudity and gang signs in light of the four factors set forth in *Turner*, defendant Rex Lay states that rejecting publications which contain gang signs serves a legitimate security interest because the ADC must ensure that units are free from gang activity, which could result in violence to staff and other inmates (Dkt. No. 71-2, p. 4–5). Similarly, Mr. Lay states rejection of nudity and sexually explicit publications helps ensure the good order of the institution because permitting such publications could interfere with rehabilitation goals of sex offenders and with security since inmates might try to traffic and trade with others (*Id.* at 5). Defendants further state that Mr. Colten possesses alternatives to exercise the right to freedom of

expression because he maintains the right to send, receive, and read a broad range of publications which do not include those restrictions. Defendants maintain that accommodating Mr. Colten's right to these restricted publications would adversely affect guards, other inmates, and prison resources and could interfere with rehabilitation goals set for sex offenders. Finally, defendants argue that no alternative exists which would allow Mr. Colten to possess the restricted materials at little or no cost to prison security. Therefore, pursuant to *Turner*, defendants state that the publications policies do not violate Mr. Colten's constitutional rights.

Mr. Colten objects to what he believes was a hearing before the Magistrate Judge Kearney with defendants excluding Mr. Colten. Mr. Colten is mistaken in this regard. The Court granted defendants' motion to submit excerpts from the magazines and book denied Mr. Colten (Dkt. Nos. 69, 75), but neither Magistrate Judge Kearney nor this Court held a hearing on the matter. The Court agrees with defendants that these exhibits were properly filed under seal. Allowing Mr. Colten unredacted copies of the publications in question would frustrate ADC's policy forbidding them in the first place. Mr. Colten states that he "has not and will not ask for real nudity in either photos or magazines. . . . This case is not about nudity, I have never requested that." (Dkt. No. 79). Mr. Colten is also mistaken in this regard. The Court reviewed the documents filed under seal and agrees with defendants that the January 2012 issue of *Esquire* contains a depiction of nudity on page 32, the February 2012 issue of *Esquire* contains a depiction of nudity on page 71, the February 2012 issue of *Maxim* contains depictions of gang signs on page 24, and MAJESTIKA contains depictions of nudity throughout (Dkt. No. 76).

Mr. Colten's next objection to the proposed findings and recommendations is that prohibiting depictions of nudity is not "reasonably related" to the "legitimate penalogical

interest" of ensuring the good order of the institution. *See Turner*, 482 U.S. at 89 (holding that a prison regulation which allegedly impinges on prisoners' constitutional rights is valid if it is reasonably related to legitimate penalogical interests). Mr. Colten states that this justification for the policy ignores the years prisoners were allowed to receive *Playboy* and *Hustler*, as well as "hardcore" pornography, during which time female guards worked in prison areas with no instance of nude pictures causing harm or assaults on female guards. However, defendants are not, as Mr. Colten suggests, required to demonstrate specific violations or incidents that justify their security or good order claims.

The Court notes that "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 125 (1977) (quotations omitted). In addition, "[b]ecause the realities of running a penal institution are complex and difficult, we have also recognized the wide-ranging deference to be accorded the decision of prison administrators." *Id.* at 126. Pursuant to the four factors set forth in *Turner*, 482 U.S. at 87, the Court finds that the ADC has a legitimate penalogical objective in minimizing security threats, maintaining discipline, and maintaining good order and that the publications policies are reasonably related to furthering such interests. Therefore, the Court finds that defendants' restrictions do not violate Mr. Colten's First Amendment rights. The Court thus adopts the proposed findings and recommendations in regard to Mr. Colten's First Amendment claim (Dkt. No. 78).

Mr. Colten in his objections also brings up various other issues that are not properly before the Court at this time, including the potential claims of Inmate Jackie Breeden, alleged

strip searches conducted by female guards, the depiction of homosexual activity in movies purportedly shown by the ADC, the ADC's duty to notify the publisher of rejections of their publications, and whether a total ban of all publications by the ADC would be constitutional.

### V.     Qualified Immunity and Fourteenth Amendment Claim

The Court has received no objections to, and adopts in full, the proposed findings and recommendations with regard to defendants' qualified immunity and Mr. Colten's Fourteenth Amendment claim. The Court finds that defendants acted reasonably under the circumstances. No reasonable fact-finder could find that the facts alleged or shown, construed in the light most favorable to Mr. Colten, established a violation of a constitutional or statutory right. Further, Mr. Colten does not have a Fourteenth Amendment claim because state law provides adequate post-deprivation remedies.

### VI.    Conclusion

For the reasons stated in this Order, the Court adopts in part and amends in part the proposed findings and recommendations (Dkt. No. 78). It is therefore ordered that defendants' motion for summary judgment is granted (Dkt. No. 71) and that plaintiff's complaint against defendants is dismissed with prejudice. An appropriate Judgment shall accompany this Order.

SO ORDERED this 28th day of March, 2014.

_Kristine G. Baker_
Kristine G. Baker
United States District Judge